## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| IN RE ) | |
|     **ENI DIST, Inc.** ) | |
| ) | Case No. 25-17220 |
| ) | Chapter 11 |
|         Debtor ) | |

## VERIFIED MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND (II) GRANTING RELATED RELIEF

COMES NOW, ENI DIST, Inc., the Chapter 11 debtor and debtor-in-possession herein (the "Debtor"), by and through undersigned counsel, pursuant to 11 U.S.C. §§ 105 and 363, Federal Rules of Bankruptcy Procedure §§2002, 4001 and 9014, files this motion seeking the entry of interim and final orders, substantially in the forms attached hereto as Exhibit A and Exhibit B (the "Interim Order" and the "Final Order," respectively), (a) authorizing, but not directing, the Debtor to pay, in the ordinary course of business, undisputed, liquidated, prepetition amounts owing on account of claims held by Critical Vendors (as defined herein) (the "Critical Vendor Claims") in an amount not to exceed $100,000 on an interim basis, and a total of $200,000 on a final basis, and (b) granting related relief. In addition, the Debtor request that the Court schedule a final hearing to consider approval of this Motion on a final basis.

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the Maryland, Baltimore Division (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Debtor confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a), 363, 503, 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004.

**<u>The Critical Vendors</u>**

4.      The Debtor is in the business of importing and distributing mainly Korean foods to local grocery stores, chain retailers, and food service distributors. Debtor as an importer must hire some companies providing services to go through Customs duty and further manage the containers at a port for the food products delivered into the USA. Debtor also inevitably engages with a trucking company for transporting services. Likewise, Korean food companies use a port in South Korea to export food products. During the import and export process, many servicing companies are involved for transportation and Customs services.  Once the food products are delivered, Debtor needs the services of promotional agencies that demonstrate and promote the food products to the consumers in the real market.  Debtor needs to engage with an Enterprise Resource Planning ("ERP") company to manage its business and also needs a utility and trash removal contractor to maintain the food products in a good condition. This is the core of the Debtor's business: engaging a limited number of critical vendors ranging from sellers of food products, exporting, importing, transporting the products, and managing companies related to the food products (collectively, the "Critical Vendors"). The Debtor's business is dependent on

importing and exporting high-quality food products, and without these vendors, the Debtor could not effectively compete in the marketplace. Without these core services, the Debtor's business would suffer greatly.

5.      The Debtor obtains food products from a limited number of vendors in South Korea or Japan that are irreplaceable, due to, among other things, that the target of the Debtor's marketing is Korean and Japanese customers in the eastern shore of USA. Debtor relies on the timely and frequent delivery of these critical food products and related services, and any interruption in this supply chain would disrupt the Debtor's operations and could potentially cause irreparable harm to its business, goodwill, customer base, and market share. The harm to the Debtor's business of not having the products or services provided by the Critical Vendors would far outweigh the cost of payment of the Critical Vendor Claims.

6.      As of the Petition Date, the Debtor also enjoys favorable trade terms with many of their Critical Vendors, including favorable trade payment terms. The Debtor's business model is effectively built on these trade terms; however, because the Debtor does not have written contracts with most of the Critical Vendors, these trade terms are subject to contraction at the Critical Vendors' discretion. The Debtor believes that many of their vendors may be relatively inexperienced with the chapter 11 process and unwilling to do business with the Debtor on customary trade terms absent the relief requested herein. This unwillingness would damage the business relationship between the parties.

7.      The Debtor has extended trade terms with many of their vendors. This allows the Debtor to pay for goods, on average three weeks, or 21 days, after the goods are received. In other words, if the Debtor receives a shipment of product on September 1, they do not pay for that product until, on average 21 days later. Any modification to these terms may require the Debtor to pay

for goods on materially shortened terms, including cash on delivery, or even prepayment for their products, creating significant inefficiencies in their operations. The less time the Debtor has to repay their vendors, the more they must rely on sources of funds other than sales to make such payments. If the Debtor's trade terms contracted from 21 days to cash-on-delivery, the Debtor estimates that they would require over $400,000 in additional liquidity as of the Petition Date. Absent that amount, which the Debtor does not have and could not secure, the Debtor would be unable to purchase and sell the products, build inventories and continue as a going concern. Accordingly, a contraction in trade terms could have a severe negative effect on the Debtor's business.

8.      Moreover, the relief requested herein is necessary because the Critical Vendors have no obligation to continue providing goods, and, as a result, the Debtor would be unable to force those vendors to continue to perform under section 365 of the Bankruptcy Code. Additionally, the Debtor does not seek authorization to honor prepetition obligations arising under contract.

9.      The Debtor submits that the requested relief will allow the Debtor to keep operating its business by paying the prepetition claims of certain counterparties that are critical to the Debtor's business enterprise. The Critical Vendors generally fall into the categories discussed below.

A.      Food Vendors.

10.      The bulk of the Critical Vendors are suppliers of the food products that the Debtor sells to local markets (the "Food Vendors"). These Vendors provide the Debtor with food products on trade terms that provide the Debtor's business with considerable liquidity. Two of the Vendors also have consignment relationships with the Debtor. Indeed, the Food Vendors represent approximately 90 percent of the Debtor's outstanding accounts payable balance. Given the

unique nature of the food products sold, the inventory and food products that the Debtor purchases from the Food Vendors are not substitutable. Furthermore, the Debtor's business is wholly reliant on the sale of such food products. The trade terms on which the Food Vendors supply goods are also critical to the Debtor's success and ability to build their inventory. Without these Food Vendors' supply of the food products and agreement to continue an ordinary course relationship, the Debtor cannot operate a profitable, successful business.

 B.    Other Vendors.

11.    The Debtor do business with certain suppliers of services that are vital to the Debtor's day-to-day operations (the "Operating Vendors") as well as vendors that provide critical marketing support products and services for their business operations (the "Marketing Vendors" and together with the Operating Vendors, collectively, the "Other Vendors"). Essential services provided by such vendors include ERP servicing, promotion, transportation, Customs duty, shipping and freight delivery servicing companies, as well as trash removal and cleaning companies. In many instances, the Other Vendors are the only vendors being able to meet specificity and uniqueness of the Debtor's operational needs.

12.    Without these Other Vendors, the Debtor would be unable to continue serving their customers, and would likely lose significant revenue. If certain Other Vendors refuse to provide services to the Debtor after the Petition Date on account of unpaid prepetition claims, the Debtor would be left scrambling to procure new vendors. This process could take several months and would almost certainly not be completed in time for effective marketing campaigns, resulting in a detrimental impact to the Company's customer interface and brand messaging efforts.

13.     The Other Vendors represent approximately ten percent of the Debtor' outstanding accounts payable balance. The vast majority of these Other Vendors are providing their services without written agreements. The relief requested herein remains necessary for Other Vendors that services to the Debtor on the basis of 30-day informal arrangements and are irreplaceable to the Debtor for the reasons stated above.

C.      Estimated Claim Amounts.

14.     The Debtor requests authority to make payments on account of prepetition Critical Vendor Claims of up to $100,000 on an interim basis and a total of $200,000 on a final basis. The Debtor submits that the requested relief will allow the Debtor to keep operating by paying the prepetition claims of certain counterparties that are critical to the Debtor's business.

Customary Trade Terms

15.     In return for paying the Critical Vendor Claims, the Debtor will require the applicable Critical Vendor to provide favorable trade terms in line with historical practices for the postpetition delivery of goods and services and otherwise continue supplying the Debtor with essential goods and services for the duration of these chapter 11 cases. The Debtor therefore requests authority to condition payment upon such Critical Vendor's written agreement to continue supplying goods or services to the Debtor for the duration of these chapter 11 cases in accordance with trade terms at least as favorable to the Debtor as those practices and programs in place 180 days prior to the Petition Date, as may be modified by any Trade Agreement (as defined herein) (collectively, the "Customary Trade Terms").

16.     More specifically, the Debtor may condition  the  payment  of Critical Vendor Claims upon such party's agreement to continue supplying goods or services on Customary Trade Terms

for the duration of these chapter 11 cases by executing a trade agreement substantially in the form attached hereto as Exhibit C (each, a "Trade Agreement"). Such Trade Agreement, once agreed to and accepted by a Critical Vendor, shall be a legally binding contractual arrangement between the parties governing the commercial trade relationship as provided therein.

17.    If any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms, then, subject to such party's right to object as set forth in the proposed Final Order, and subject to any Trade Agreement that may be executed between the Debtor and such party: (a) such payment may be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore, such payment will be immediately recoverable by the Debtor in cash upon written request; (b) upon recovery by the Debtor, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtor to such party, the Debtor may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtor such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

The Critical Vendors Process

18.    Debtor has spent considerable time reviewing and analyzing their books and records, reviewing contracts and supply agreements, and analyzing applicable laws, regulations, and historical practice to identify certain critical business relationships and/or suppliers of goods and services—the loss of which would materially impair the going-concern viability of the Debtor's business. In this process, the Debtor considered a variety of factors, including: (a) whether a

7

vendor is a sole- or limited-source or high-volume supplier for goods or services critical to the Debtor's business operations; (b) whether alternative vendors are available that can provide requisite volumes of similar goods or services on equal, or better, terms and, if so, whether the Debtor would be able to continue operating while transitioning business thereto; (c) the degree to which replacement costs, including pricing, transition expenses, professional fees, and lost sales or future revenue, exceed the amount of a vendor's prepetition claim; (d) whether an agreement exists by which the Debtor could compel a vendor to continue performing on prepetition terms; (e) whether certain specifications or contract requirements prevent, directly or indirectly, the Debtor from obtaining goods or services from alternative sources; (f) whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship food products or to provide critical services on a postpetition basis; (g) whether the Debtor's inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor; and; (h) whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation.

Legal Authority

19.    Courts across many jurisdictions have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve bankruptcy estate, including an operating business' going-concern value. See, *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a).

20.    Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11

U.S.C. § 363(b)(1). Courts have allowed Debtor to use assets outside of the ordinary course of business, such as pay prepetition obligations, where a sound business purpose exists for doing so.

21.     No provision of the Bankruptcy Code expressly prohibits the postpetition payment of prepetition critical vendor claims. Indeed, the above-referenced sections of the Bankruptcy Code authorize such payments when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here.

22.     As described above, the Debtor requires a steady stream of goods and services from their Critical Vendors to maintain adequate inventory and operational stability as they transition into chapter 11. Without the goods and services provided by the Critical Vendors, the Debtor would be forced to cease or substantially curtail operations.

23.     Importantly, any disruption to the Debtor's business operations could result in a significant loss of operational efficiency. Accordingly, the Debtor submits that it is appropriate for the Court to authorize the Debtor to satisfy the Critical Vendor Claims as set forth herein.

24.     If the Debtor does not pay the Critical Vendor Claims, the resulting harm to the Debtor's estates would far outweigh the cost associated with paying a portion of the Debtor's prepetition obligations to the Critical Vendors. Thus, the Debtor's other creditors will be far better off on account of the Debtor's ability to continue its operations if it successfully negotiates such Critical Vendor payments and achieves a smooth transition into bankruptcy with minimal disruption to their operations. As such, the Debtor believes the relief sought in this Motion will not burden the Debtor, but will help maximize the value of their estates.

Processing of Checks and Electronic Fund Transfers Should Be Authorized

25.    The Debtor has sufficient funds to pay any amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to debtor-in-possession financing and cash Collateral. The Debtor believes there is very minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made. As such, the Debtor respectfully requests that the Court authorize all applicable financial institutions, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

<u>The Requirements of Bankruptcy Rule 6003 Are Satisfied</u>

26.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing, but not directing, the Debtor to pay the Critical Vendor Claims in the ordinary course of business, as well as granting the other relief requested herein is integral to the Debtor' ability to transition their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtor' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtor to operate their business in the ordinary course and preserve the ongoing value of the Debtor' operations. Accordingly, the Debtor submits that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

<u>Waiver of Bankruptcy Rule 6004(a) and 6004(h)</u>

27.    To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

<u>Reservation of Rights</u>

28.    Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code, or any foreign bankruptcy or insolvency law, or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code, or any other applicable law. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor' rights to subsequently dispute such claim.

<u>No Prior Request</u>

29.    No prior request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE,** Debtor prays that the Court:

A.  Enter the Interim Order and Final Order granting the relief requested herein;

B.  Waive the requirement of a separate memorandum of facts and law pursuant to Local

Bankruptcy Rule 9013-2;

C.  Waive the notice requirements of Bankruptcy Rule 6004(a) and the 14-day stay under

Rule 6004(h); and

D.  Grant such other relief as the Court may deem just and proper.

Respectfully submitted:

ENI DIST, Inc., by counsel

/s/ Weon Geun Kim
Weon Geun Kim, Esq.
Weon G. Kim Law Office
8200 Greensboro Dr.
Suite 900
McLean, VA 22102
Tel: (571) 278-3728
Fax: (703) 288-4003
jkkchadol99@gmail.com
Counsel for Debtor
Federal Bar No. 19029

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August, 2025, I caused a copy of the foregoing Motion to be served on the United States Trustee via CM/ECF, and on the following parties via first-class mail, postage prepaid:

| | | |
|---|---|---|
| American Express Card<br>PO Box 981556<br>El Paso, TX 79998 | Arba Credit Investors, L.P.<br>161 Washington Street<br>Suite 1525<br>Conshohocken, PA 19428 | Arba Credit Investors, L.P.<br>c/o David Musgrave, Esq<br>1001 Fleet St 7th Floor<br>Baltimore, MD 21202 |
| Austin Business Finance<br>Dba Backd<br>4853 Williams Dr. Ste 111<br>Georgetown, TX 78633 | Austin Business Finance<br>Dba Backd c/o Chris Mundt, Esq<br>PO Box 19134<br>Austin, TX 78760 | Bank of America<br>PO Box 15796<br>Wilmington, DE 19886-5796 |
| Bank of Hope<br>3200 Wilshire Blvd, Suite 1400<br>Los Angeles, CA 90010 | Capital One Bank<br>PO Box 70187<br>Charlotte, NC 28272 | Chase Card<br>PO Box 1423<br>Charlotte, NC 28201-1423 |
| Comptroller of Maryland<br>Bankruptcy Unit<br>7 St. Paul Street STE230<br>Baltimore, MD 21202 | CRIMPCO<br>2545 LORD BALTIMORE DR.<br>STE H<br>Windsor Mill, MD 21244 | DW Global, Inc.<br>18000 Studebaker Rd<br>Ste 555<br>Cerritos, CA 90703 |
| EMART AMERICA, INC.<br>975 W IMPERIAL HWY STE 110<br>Brea, CA 92821 | FIRELINE CORPORATION<br>4506 HOLLINS FERRY RD<br>Halethorpe, MD 21227 | GLOBAL FOOD #1-MNSS<br>10320 FESTIVAL LANE<br>Manassas, VA 20109 |
| GLOBAL FOOD #2 WB<br>13813 FOULGER SQUARE<br>Woodbridge, VA 22192 | GLOBAL FOOD #5 ALX<br>1476 NORTH BEAUREGARD ST<br>Alexandria, VA 22311 | GLOBAL FOOD #6 SS<br>13814 OUTLET DR<br>Silver Spring, MD 20904 |

| | | |
|---|---|---|
| GLOBAL FOOD -Baltimore<br>6606 Security Blvd<br>Gwynn Oak, MD 21207 | GYEONG NAM TRADING INC.<br>74-1, Happoro, Masanhappogu<br>Changwonsi, Gyeongsangnamdo 51714<br>South Korea (International first-class) | Internal Revenue Service<br>Centralized Insolvency Operation<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 |
| Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | Jin Heung Food Co., Ltd.<br>767-11, Namyangmanro, Ujeongeup<br>Hwaseong-si, Gyeonggi-do 18572<br>South Korea (International first-class) | KARIS INC<br>7125 Rosemead Blvd<br>Pico Rivera, CA 90660 |
| LEE KUM KEE (USA) INC<br>30-56 Whitestone Expy<br>Ste 350<br>Flushing, NY 11354 | LG H&H USA<br>PO Box 894495<br>City of Industry Rowland Height<br>Los Angeles, CA 90189-4495 | Lotte INT'L America Corp<br>1100 Coiner Ct<br>Rowland Heights, CA 91748 |
| LOTTE PLAZA-ASHBURN<br>43930 FARMWELL HUNT PLAZA<br>Ashburn, VA 20147 | LOTTE PLAZA-CATONSVILLE<br>6600 BALTIMORE NATIONAL PIKE<br>Catonsville, MD 212b28 | LOTTE PLAZA-CENTREVILLE<br>5900 CENTREVILLE CREST LN<br>Centreville, VA 20121 |
| LOTTE PLAZA-CHANTILLY<br>13955 METROTECH DR<br>Chantilly, VA 20151 | LOTTE PLAZA-EDISON<br>1199 AMBOY AVENUE<br>EDISON, NJ 08837 | LOTTE PLAZA-ELLICOTT CITY<br>8801 BALTIMORE NATIONAL PIKE<br>Ellicott City, MD 21043 |
| LOTTE PLAZA-GB<br>221 MUDDY BRANCH RD<br>Gaithersburg, MD 20878 | LOTTE PLAZA-HERNDON<br>490 ELDEN STREET<br>Herndon, VA 20170 | LOTTE PLAZA-ORLANDO<br>3191 W COLONIAL DR<br>Orlando, FL 32808 |
| LOTTE PLAZA-RICHMOND<br>7801 West Broad St.<br>Richmond, VA 23294 | LOTTE PLAZA-ROCKVILLE<br>1902 VEIRS MILL RD<br>Rockville, MD 20851 | LOTTE PLAZA-SPRINGFIELD<br>5204 PORT ROYAL RD<br>Springfield, VA 22151 |
| LOTTE PLAZA-STERLING<br>30 Pidgeon Hill Dr<br>Sterling, VA 20165 | LOTTE PLAZA-TAMPA<br>17605 Bruce B Downs Blvd.<br>Tampa, FL 33647 | Maryland Department of Labor<br>ATTN: Legal Services<br>100 S Charles St Tower 1<br>Baltimore, MD 21201 |
| Md Department of Human Service<br>25 South Charles Street<br>Baltimore, MD 21201-3330 | MD Dept. Assessments Taxation<br>301 W. Preston Street, Room 801<br>Baltimore, MD 21202 | MEGA MART-GA<br>2106 PLEASANT HILL RD<br>Duluth, GA 30096 |
| METRO CHEF<br>3925 VENTURE DR<br>Duluth, GA 30096 | Metro Chef<br>3925 Venture Dr.<br>Duluth, GA 30096 | ORACLE AMERICA INC<br>2300 Oracle Way<br>Austin, TX 78741 |
| Otoki America Inc.<br>16200 Trojan Way<br>La Mirada, CA 90638 | PENSKE<br>PO Box 827380<br>Philadelphia, PA 19182 | Prime Landscape LLC.<br>3780 Old Norcross Rd<br>Suite 103-275<br>Duluth, GA 30096 |
| Samyang America, Inc.<br>140 S. STATE COLLEGE BLVD SUITE 100<br>Brea, CA 92821 | SUNGWON DISTRIBUTOR<br>8241 Sandy Ct<br>Jessup, MD 20794 | SUPER MAX ENTERPRISE<br>23550 PEBBLE RUN PL<br>Sterling, VA 20166 |
| TAEHYUN HOLDINGS LLC<br>7020 Columbia Gateway Dr.<br>Columbia, MD 21046 | UNITED EXCHANGE CORP<br>5836 CORPORATE AVE. S, STE 200<br>Cypress, CA 90630 | US Small Business Administration<br>100 S. Charles St., Suite 1201<br>Baltimore, MD 21201 |
| Waste Management of Maryland,<br>PO BOX 13648<br>Philadelphia, PA 19101-3648 | GYEONG NAM TRADING INC.<br>c/o KSURE Washington DC CORP<br>1331Pennsylvania Ave, NW, Suite 625<br>Washington DC 20004 | |

/s/ Weon Geun Kim
Weon Geun Kim, Esq

## AFFIDAVIT

I solemnly affirm under the penalties of perjury that the contents of foregoing paper are true to the best of my knowledge information, and belief.

/s/ Lee Seung Hoon
ENI, DIST, Inc.
signed by Seung Hoon Lee, President