IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| IN RE )<br>**ENI DIST, Inc.** )<br>)<br>)<br>Debtor )<br>) | Case No. 25-17220<br>Chapter 11 |

**DEBTOR'S BRIEF**
**REGARDING UCC STATUS OF ARBA AND CASH COLLATERAL RIGHTS**

**INTRODUCTION**

ARBA Credit Investors III, L.P. ("ARBA") seeks to prohibit ENI Dist, Inc. (the "Debtor") from using funds that are critical to the continued operation of its business. The Court, recognizing the importance of preserving the Debtor as a going concern, entered an interim order permitting the Debtor to use one-half of its budget while directing that the remaining half be escrowed pending resolution of ARBA's lien claims.

The issue before the Court is narrow: whether ARBA, as assignee of Fulton Bank, holds a perfected security interest in the Debtor's accounts receivable and bank deposits. The answer is no. Columbia Bank's financing statement lapsed when its continuation was ineffectively filed in 2023 under the name of a non-existent entity. Fulton Bank's subsequent UCC-1 filing in 2023 was indisputably junior to Bank of Hope's 2021 filing. And no creditor, including ARBA, has perfected any security interest in the Debtor's bank deposits because Maryland law requires "control" for perfection, which no party has shown.

Because ARBA has no perfected lien, it has no "cash collateral" interest under 11 U.S.C. § 363(a). Its motion to prohibit use must therefore be denied, and the escrowed funds released to the Debtor.

1

## BACKGROUND

On June 7, 2017, the Debtor executed a Commercial Security Agreement in favor of The Columbia Bank covering substantially all assets, including accounts, inventory, and deposit accounts. Columbia Bank filed a UCC-1 financing statement on October 29, 2018.

Effective on September 14, 2019[1], Columbia merged into Fulton Bank, N.A., and ceased to exist as a separate legal entity (Filed Exhibit C). Despite that merger, a continuation financing statement was filed in the name of "Columbia Bank" on August 2, 2023 (Filed Exhibits D-1, D-2, D-3). By then, Columbia had long since been dissolved by merger.

On December 27, 2022, the Debtor executed a new Security Agreement in favor of Fulton Bank (Security Agreement-2). Fulton filed its own UCC-1 on February 10, 2023. By that time, however, Bank of Hope had already filed a financing statement on October 12, 2021 (Filed Exhibit F). Under the "first-to-file" rule, Bank of Hope became the senior secured creditor as to accounts receivable.

The timeline of filings and lien events is set out in the following chart for ease of reference:

| Date | Event | Resulting Effect on Perfection |
|---|---|---|
| Oct. 29, 2018 | Columbia Bank files UCC-1 financing statement (Security Agreement). | Columbia perfected security interest in Debtor's assets. |
| Sept. 14, 2019 | Columbia Bank merges into Fulton Bank (Filed Exhibit C). | Columbia ceases to exist; Fulton becomes successor. |
| June 6, 2020 | SBA files UCC-1 financing statement | SBA becomes senior secured creditor on accounts SBA perfected lien; holds priority over later filings. |
| Oct. 12, 2021 | Bank of Hope files UCC-1 financing statement (Filed Exhibit F). | Bank of Hope becomes senior secured creditor on accounts. |

---

[1] The merger was published at MSDA on September 23, 2022 with its effective date of September 14, 2019 See Article VII Effective Date 7.1. "the merger shall…be consummated…September 14, 2019…"

| Feb. 10, 2023 | Fulton Bank files new UCC-1 financing statement (Security Agreement-2). | Filing is junior to SBA and Bank of Hope under "first-to-file." |
| Aug. 2, 2023 | Continuation filed in Columbia Bank's name (Filed Exhibits D-1, D-2, D-3). | Invalid; Columbia no longer exists; prior filing lapses. |
| Mar. 25, 2025 | Fulton assigns its interest to ARBA. | ARBA takes subject to defects; remains junior and defective. |

As the chart reflects, Columbia's original financing statement expired when its continuation was ineffectively filed under the name of a non-existent bank, and Fulton's subsequent filing was already junior to Bank of Hope. ARBA's later assignment gave it no better rights than Fulton had.

The Debtor's balance sheet shows accounts receivable of $1,640,047.27 and bank deposits of $71,488.98 (Filed Exhibit E). By interim order, the Court authorized the Debtor to use one-half of its proposed budget and directed that the remaining half be held in escrow pending final determination of ARBA's motion.

## ISSUE PRESENTED

Whether ARBA holds a perfected security interest in the Debtor's receivables and deposits where Columbia Bank's continuation was filed under a ceased entity and Fulton Bank's UCC-1 was junior to SBA and Bank of Hope.

## LEGAL STANDARD

Section 363 of the Bankruptcy Code governs the use of cash collateral. "Cash collateral" includes the proceeds of property in which both the estate and a creditor have an interest, such as accounts receivable or deposit accounts. 11 U.S.C. § 363(a). A debtor in possession may not use cash collateral without either the consent of the secured creditor or authorization from the Court.

3

11 U.S.C. § 363(c)(2). These protections apply only to creditors who hold a valid, perfected security interest.

Under the Maryland Uniform Commercial Code, strict compliance with filing requirements is required for financing and continuation statements. Md. Code Com. Law § 9-506 allows substantial compliance to excuse minor debtor-name errors that are not seriously misleading, but the integrity of the UCC system depends on accurate identification of the secured party of record.

**ARGUMENT**

I. <u>Columbia Bank's continuation statement was void.</u>

When a financing statement contains an error or omission, the applicable standard for determining its effectiveness is one of substantial compliance. Md. Code Com. Law § 9-506(a) provides that a financing statement "substantially satisfying the requirements of this subtitle is effective, even if it has minor errors or omissions." This standard applies specifically to the debtor's name. See § 9-506(b)–(c) (a financing statement that fails to sufficiently provide the debtor's name is "seriously misleading," except where a search under the correct name using standard logic would disclose the filing).

By contrast, the secured party's name must be correctly provided. Md. Code Com. Law § 9-502(a)(2) states that a financing statement is sufficient only if it "provides the name of the secured party or a representative of the secured party." Likewise, under Md. Corp. & Ass'ns Code § 2-103, a corporation must be properly registered with the Maryland Department of Assessments and Taxation in order to act as a legal entity. Columbia Bank ceased to exist as of September 14, 2019, upon its merger into Fulton Bank. Therefore, by the time a continuation statement was filed

4

on August 2, 2023, "Columbia Bank" was no longer a legally recognized entity. A continuation statement filed in the name of a defunct bank cannot perfect or continue any security interest.[2]

Case law interpreting the UCC confirms this conclusion. In *Brams Ltd. v. Elf Enterprises, Inc.*, 573 N.W.2d 139, 142–43 (Neb. 1998), the Nebraska Supreme Court upheld continuation statements filed under the name of the surviving bank after a merger, even though no written assignment was recorded, because the filings placed creditors on notice of an existing secured party. Similarly, in *In re Kruckenberg*, 160 B.R. 663, 669–70 (D. Kan. 1993), the court sustained continuations filed by "First National Bank of Medicine Lodge, formerly Isabel State Bank," reasoning that naming the surviving entity was not misleading and fulfilled the notice function. Additionally, in *F.D.I.C. v. Victory Lanes*, 158 B.R. 617, 619–22 (E.D. Va. 1993), the court found that a continuation statement signed by the FDIC in its corporate capacity, rather than expressly as "receiver," was still effective because it identified a real, existing creditor.

These authorities all share a common principle: courts may excuse formal defects where the continuation statement identifies a surviving bank or other existing secured party, thereby preserving the UCC's notice function.[3] The present case is fundamentally different. The August 2, 2023 continuation was filed solely under the name "Columbia Bank," an institution that had ceased to exist in 2019. Unlike the filings in *Brams*, *Kruckenberg*, and *Victory Lanes*, the continuation here did not identify any surviving creditor. Filing under the name of a defunct entity provides no notice, is seriously misleading, and cannot continue perfection under Article 9.  Bank."

---

[2] Even if a search under the debtor's name might disclose the continuation, the defect lies not in the debtor's identification but in the secured party's legal existence. Filing under the name of a defunct institution is not a minor error—it is a fatal misrepresentation that voids the continuation under Md. Code Com. Law § 9-502(a)(2).

[3] The UCC is a notice-filing system, and its effectiveness depends on identifying a real, existing secured party. A continuation filed under the name of a bank that has ceased to exist misdirects searchers to an entity that cannot hold rights, and thus fails the notice function altogether.

II.     <u>Fulton Bank's UCC-1 was junior to Bank of Hope.</u>

Fulton's own financing statement was filed in February 2023. Bank of Hope's was filed in October 2021. Priority is determined strictly by the "first-to-file" rule. Md. Com. Law § 9-322(a)(1). Fulton, and by extension ARBA, is junior to Bank of Hope.

III.    <u>ARBA's assignment gave it no greater rights.</u>

Under Md. Com. Law § 9-310(c), an assignee takes subject to all defects and limitations of the assignor. ARBA's March 2025 assignment of Fulton's interest gave ARBA no better position than Fulton itself had, which was at best a junior, undersecured lien.

IV.     <u>Bank deposits are unencumbered.</u>

Under Maryland law, perfection of a security interest in a deposit account requires "control," not the filing of a financing statement. Md. Com. Law §§ 9-104, 9-312(b)(1), 9-327. A creditor has control only if (i) it is the bank where the deposit account is maintained, (ii) the debtor, the bank, and the creditor enter into a control agreement giving the creditor the right to direct funds, or (iii) the account is placed directly in the creditor's name. Absent one of these arrangements, a security interest in a deposit account is not perfected.

Here, neither Columbia, Fulton, nor ARBA has ever established control over the Debtor's bank accounts. None of them is the depository bank, no control agreements exist, and the accounts have always remained in the Debtor's name. Filing a UCC-1 purporting to cover "all assets" does not create perfection in deposit accounts.

Accordingly, the Debtor's deposits, totaling $71,488.98 (Filed Exhibit E), are unencumbered property of the estate. They are not "cash collateral" within the meaning of 11 U.S.C. § 363(a), and the Debtor is entitled to use them freely in the ordinary course of business.

V.      <u>Policy and equity require denial of ARBA's motion.</u>

The Court's interim order already reflects recognition that ARBA's claim is uncertain and that the Debtor's operations must be preserved pending resolution. The UCC's notice filing system exists to protect creditors who search the record. Allowing perfection by a continuation filed under the name of a defunct institution would undermine the system and prejudice third parties. Equally important, the Bankruptcy Code favors reorganization and preservation of value. Cutting off access to funds based on ARBA's defective filings would serve neither the creditors collectively nor the estate. The Court's interim order, which permitted limited cash use while holding funds in escrow, recognized the need to preserve operations. On final determination, ARBA's motion should be denied and the escrow released to the Debtor.

## CONCLUSION

For the reasons stated above, ARBA has no perfected security interest in the Debtor's receivables or deposits and thus has no "cash collateral" rights under § 363(a). The Debtor respectfully requests that this Court:

1. Deny ARBA's Motion to Prohibit Use of Cash Collateral;

2. Release the escrowed funds to the Debtor; and

3. Authorize the Debtor to use cash collateral in full going forward, subject only to providing adequate protection to valid, perfected secured creditors.

Respectfully submitted:

ENI DIST Inc., by counsel

/s/ Weon Geun Kim
Weon Geun Kim, Esq.
Weon G. Kim Law Office
8200 Greensboro Dr.

Suite 900<br>
McLean, VA 22102<br>
Tel: (571) 278-3728<br>
Fax: (703) 288-4003<br>
<u>jkkchadol99@gmail.com</u><br>
Counsel for Debtor<br>
Federal Bar No. 19029

<b><u>CERTIFICATE OF SERVICE</u></b>

  I hereby certify that on this 29th day of August, 2025, I caused a copy of the foregoing was served electronically on all parties registered to receive electronic noticing in this case via this Court's CM/ECF system, including:

David S. Musgrave, counsel for ARBA, dmusgrave@gfrlaw.com

U.S. Trustee – Baltimore, USTPRegion04.BA.ECF@USDOJ.GOV

Hugh M. (UST) Bernstein, hugh.m.bernstein@usdoj.gov

<u>/s/ Weon Geun Kim</u><br>
Weon Geun Kim, Esq.